Donald Lee POTTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 44773.

Court of Criminal Appeals of Texas.

May 9, 1972.

Rehearing Denied June 28, 1972.

———◆———

Jack Paul Leon, San Antonio, for appellant.

Ted Butler, Dist. Atty., Fred Rodriguez, Bob Spicer and Antonio G. Cantu, Asst. Dist. Attys., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is taken from a conviction for the offense of felony theft. Punishment was assessed by a jury at eight years.

Appellant challenges the validity of his conviction on three grounds: that the evidence is insufficient to support the verdict; that the trial court erred in overruling his motion to suppress evidence which he contends was illegally seized and that such evidence shows an extraneous offense; and that the court coerced the jury into arriving at a verdict of guilty.

Appellant was charged with the theft of an automobile [hereinafter referred to as Car A] from A. C. Benson. Car A was a 1968 blue-gray Chevrolet Malibu coupe bearing the 1969 Texas license number GJN 779. Car A also bore vehicle identification number 136378 K 161555.

On August 22, 1969, Detective Stanley Moryl, who was assigned to the auto theft detail of the San Antonio Police Department, responded to a call at L & W Auto Parts in San Antonio. There, he found the "burned out" shell of a 1968 Chevelle Super Sport car. This vehicle had been so badly burned that its color could not be determined. No license plates were found on the car, but Detective Moryl found, on the rear floor board of the vehicle [hereinafter referred to as Car B], a 1968 Texas license plate bearing the number JGY 718. His inspection of Car B revealed that the vehicle identification number plate had been removed from the dashboard, but he was able to locate and remove, with an acetylene torch the "confidential number" which had been engraved on the body of the car at the factory. The "confidential" vehicle identification number found on Car B was 8K115236.

From a check of the records at the Bexar County Tax Assessor's office, Detective Moryl learned that title to Car B had been transferred to appellant on July 2, 1969.[1] Appellant's address was listed as 1134 Shadwell in San Antonio. The 1969 Texas license number was listed as GZY 770.

On August 25, 1969, Detective Moryl received information from a confidential informant that appellant was dealing in stolen cars. He was, however, unable to locate appellant.

On September 15, 1969, A. C. Benson, sales manager in charge of used cars for Tom Benson Chevrolet, notified the police that an inventory of the cars on the used car lot revealed that Car A was missing. While Benson did not know specifically when the car was taken, he did know that it had been taken since the previous inventory which had been conducted on Septem-

---

1. Both the 1968 license number and the vehicle identification number reflected on the tax record and transfer of title record correspond to those found on Car B.

ber 5, 1969.[2] Benson, who had care, custody and control of all the cars on the used car lot, had given no one permission to take Car A.[3]

At approximately nine o'clock on the morning of November 13, 1969, Detective Moryl received a tip from a confidential informant that appellant was in possession of a stolen car. Included in this tip was information as to where appellant was then residing[4] and as to where appellant's wife, Donna Potter, was employed and could be contacted.

Detective Moryl established surveillance of appellant's home, and fifteen minutes later, at approximately eleven o'clock, he saw appellant drive into the driveway of his home in a 1968 Chevrolet Malibu with license number GZY 770. When the vehicle came to a halt, Detective Moryl was able to observe appellant's passenger alight and walk toward the residence. Since his vision was blocked, he could not determine definitely if the passenger or appellant entered the home.

Realizing that the car which appellant had driven was improperly registered and suspecting that this vehicle might have been stolen, Detective Moryl radioed for assistance. When Officer Tom Purnell, of the San Antonio Police Department, responded, the two officers proceeded to the front door of appellant's home. Detective Moryl knocked at the front door but received no response. The two officers heard a door slam, and Officer Purnell proceeded to the rear of the house to investigate. Detective Moryl walked to the side of the house, looking into the windows for someone to whom he could speak about the improperly registered vehicle in the driveway. Looking through the window on the garage door, he observed a dark colored 1968 Chevrolet bearing license number GWX 770. He radioed his dispatcher and learned that the vehicle in the garage [hereinafter referred to as Car C] had been reported as stolen.

Upon learning that Car C was a stolen vehicle, Detective Moryl went to a neighbor's home to use the telephone and called appellant's wife, Donna Potter, at her place of employment. He identified himself as a police officer, informed her that he had found a stolen car parked in her garage and a car he suspected had been stolen parked in her driveway, and asked her "if she wanted to come out there or if she wanted us to go ahead and work it out on our own . . . . " Mrs. Potter agreed to return to her home. Upon learning that she would have to wait for a bus, the officer offered to send a patrol car for her, and she accepted the offer.

Detective Moryl prepared a consent to search form[5] which Mrs. Potter signed in

2. The record reflects that, at the time in question, there were ten salesmen working under Benson. Inventory was taken of the approximately 200 cars on the lot every two weeks. The salesmen made a list of the cars present on the lot, and Benson checked these lists against his "book inventory." When a vehicle was found to be missing, Benson personally looked for that car in order to ascertain whether a salesman had allowed someone to test drive that car. With regard to Car A, Benson contacted each salesman, looked at the check-out records, and searched for the car personally before notifying the police that it was missing.

3. A check-out procedure for the used cars had been established by the corporation.

Benson and any of his ten salesmen could allow a potential customer to test drive a car. Four of these salesmen, designated as supervisors, had authority to allow salesmen working in the new car section of the corporation and mechanics to take a car off of the used car lot. In each instance, a record was kept of when the car left the lot and when it was returned. Car A had not been checked out according to this procedure at the time it was reported as missing.

4. The record shows this address to be different from the one given when Car B was registered.

5. The document reads in part: I, Donna Potter, having been informed of my con-

triplicate when she arrived. Prior to signing the form, she was asked whether she had read and understood it, and she stated that she did.

Mrs. Potter then opened the garage door for the officers, and Car C was pushed out of the garage. Detective Moryl examined the car parked in the driveway. He found that the vehicle identification plate on the dashboard showed the same number as he had found on Car B. He then lifted the hood and found the identification number on the motor. Learning that the number on the motor and the number on the dash plate did not correspond, he checked his "auto theft book" and found that the motor vehicle identification number showed the car to be Car A, the one taken from the used car lot of Tom Benson Chevrolet.

With regard to appellant's contention that the evidence is insufficient to support the verdict, the record reflects that: (1) Car A was taken from the used car lot without the permission of A. C. Benson sometime between September 5, and September 15, 1969; (2) that A. C. Benson had care, custody, and control of Car A and the other cars on the lot during this period; (3) that Car A had a fair market value of over fifty dollars [6]; (4) that appellant was in possession of Car A on November 13, 1969; (5) that the license plates and dash plate vehicle identification number from Car B had been placed on Car A [7]; (6) that Car B was a "burned out" shell; (7) that on November 13, 1969, appellant was also in possession of Car C; and (8) that Car C had been stolen from Pat Maloney on November 12, 1969.

■ Appellant's contention that the evidence is insufficient because title to Car A was not proved to have been in the name of A. C. Benson at the time that it was taken has been decided adversely to him in Reeves v. State, Tex.Cr.App., 428 S.W.2d 320. We adhere to our decision in that case, that, under Article 21.08, Vernon's Ann.C.C.P., ownership may be alleged in either the person who owns the property or another who has possession of the same.

■ Appellant's contention that the state's proof showed that he had title to Car A is without merit. Taking the evidence in the light most favorable to the jury's verdict, the state proved that appel-

stitutional right not to have a search made of the premises hereinafter described without a search warrant and of my right to refuse to consent to such a search, do hereby authorize . . . a complete search of the property and premises occupied by me and described as: 1 story pink brick front gravel roof, located at 115 Clubhill Dr. . . . This written permission is being given by me . . . voluntarily and without threats or promises of any kind."

6. A. C. Benson, after having been qualified as an expert, testified that the fair market value of the vehicle was approximately $2000.

7. For the purposes of clarity, the following information was developed in evidence and should be remembered. The three vehicles involved in the instant case were 1968 Chevrolets. On this model car, there are three places where the motor identification number appears: (1) on the dash plate, (2) on the motor, and

■ on the body of the vehicle. The latter was called the "confidential number" by the witnesses. The full vehicle identification number is given on the dash plate. However, only the sequential production number, the last portion of the entire vehicle identification number, is contained in the confidential number. What is important for identification of a vehicle is the sequential production number, since the first portion of the entire number relates only to the model of the car.

In the instant case, the sequential production number for Car A is 8 K 161555, showing that it was the 161,555th car produced by Chevrolet's Kansas City plant in 1968. The sequential production number of Car B is 8 K 115236, showing that it was car number 115,236 produced by the Kansas City plant in 1968. Thus, no two cars would have the same sequential production number, and identity of the vehicles can be established.

lant was the owner of Car B, and that Car B existed as a "burned out" shell in a junk yard.

The court charged the jury on the law of circumstantial evidence. The jury resolved these fact issues against appellant, and we conclude that the evidence is sufficient to support the verdict.

■ With regard to appellant's contention that the evidence found at his home was seized during the course of an illegal search, the record reflects: (1) that Detective Moryl had probable cause to believe that appellant was committing a misdemeanor under Article 812, Vernon's Ann. P.C.[8] when he first saw appellant on the morning of November 13, 1969; (2) that the detective, being lawfully on appellant's property to discuss the improper vehicle registration with appellant, did not conduct an illegal search by looking into the window of the garage door[9]; and (3) that appellant's wife consented to the search. Moreover, the record in the instant case is completely devoid of any evidence that Mrs. Potter was in any way coerced into signing the consent form.[10]

■ Appellant contends that his wife did not read the consent form and signed it only because she believed that such form was a search warrant. However, the record reflects that, before she signed the form, Mrs. Potter told the officer that she had read and understood the form when he questioned her regarding this matter.[11]

Appellant's wife having voluntarily consented to the warrantless search, appellant has no grounds to complain of the introduction of the fruits of that search. See, e. g., Woodbury v. Beto, 426 F.2d 923 (5th

---

8. Article 812, V.A.P.C., provides:
   "No person shall attach to or display on any motor vehicle any number plate or seal assigned to a different motor vehicle or assigned to it under any other motor vehicle law other than by the State Highway Department, or any registration seal other than that assigned for the current year, or a homemade or fictitious number plate or seal. All letters, numbers and other identification marks shall be kept clear and distinct and free from grease or other blurring matter so that they may be plainly seen at all times during daylight. Whoever violates any provision of this article shall be fined not exceeding two hundred dollars."
   In the instant case, the officer knew that Car B, the car registered to appellant, existed in an unusable condition in a junk yard. He could see that the car which appellant was driving bore license plates registered to Car B. In such circumstances, Detective Moryl was in possession of reasonably trustworthy information which would lead a man of reasonable caution and prudence to believe that a crime was being committed. See, e. g. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

9. See generally, Palmer v. State, Tex.Cr. App., 475 S.W.2d 797; Gil v. State, Tex. Cr.App., 394 S.W.2d 810; Capuchino v. State, Tex.Cr.App., 389 S.W.2d 296. This is not a case, as appellant contends, where an officer, guided by nothing but his suspicions, commits a civil trespass onto private property in order to peer into windows for evidence to confirm his suspicions. See, e. g., Texas v. Gonzales, 388 F.2d 145 (5th Cir. 1968); Brock v. United States, 223 F.2d 681 (5th Cir. 1955). The record reflects that Detective Moryl did not even suspect that he would find a stolen vehicle in the garage but, instead, shows that he was simply looking for "someone to talk to . . ." about the improperly registered vehicle in the driveway.

10. At the hearing on appellant's motion to suppress, Donna Potter testified that she was not threatened or coerced at any time.

11. The record is unclear as to whether or not Mrs. Potter was warned of her rights prior to signing the form. However, the giving of such warnings, while good police practice, is not required prior to obtaining consent to search. Cf. Reynolds v. State, (No. 44,841 5-3-72); DeVoyle v. State, Tex.Cr.App., 471 S.W. 2d 77.

**106**

Cir. 1970) ; United States v. Thompson, 421 F.2d 373 (5th Cir. 1970) ; Gurleski v. United States, 405 F.2d 253 (5th Cir. 1968) ; Hannon v. State, Tex.Cr.App., 475 S.W.2d 800; Powers v. State, Tex.Cr.App., 459 S.W.2d 847; Burge v. State, Tex.Cr.App., 443 S.W.2d 720.

Appellant contends that, in any event, the fruits of the search were inadmissible as they showed an extraneous offense. True, the admission into evidence that Car C was stolen on November 12, 1969, shows an extraneous offense. However, under the facts of this case such was admissible to show identity, intent, and system. See 23 Tex.Jur.2d, Evidence, Section 195.

Finally, appellant contends that "[t]he court coerced the jury into arriving at a verdict of guilty." The basis of this complaint is that the jury on two occasions during their deliberations sent notes to the court stating that they were unable to agree on a verdict. After receiving the second note, the court inquired of appellant if he "moves for a discharge of this jury." See Article 36.31, V.A.C.C.P. The appellant declined to so move. He did, however, object to the court informing the jury that they should endeavor to reach a verdict if at all possible and that they would be kept together for such time as to render it ". . . improbable that the jury can agree."

The record reflects that this instruction was given in compliance with Article 36.27, V.A.C.C.P., after the jury had been deliberating approximately four hours. Some forty minutes after the instruction was given, the jury returned a verdict.

Under such circumstances, we find that no undue coercion on the part of the trial court has been shown. Mitchell v. State, 482 S.W.2d 223 (1972).

There being no reversible error, the judgment is affirmed.