**UNITED STATES of America ex rel. John KIRK, Petitioner-Appellant,**

v.

**DIRECTOR, DEPARTMENT OF CORRECTIONS, STATE OF ILLINOIS, Respondent-Appellee.**

No. 81–2274.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1982.

Decided May 19, 1982.

Timothy P. O'Neill, Asst. Public Defender, Chicago, Ill., for petitioner-appellant.

Ronald Lee Bell, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before WOOD, ESCHBACH and POSNER, Circuit Judges.

ESCHBACH, Circuit Judge.

In this appeal from the denial of a state prisoner's petition for habeas corpus, we are called upon to decide whether the rule forbidding trial judges from inquiring as to the jury's numerical division, enunciated by the Supreme Court in *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), is binding on the states through the Fourteenth Amendment, or whether it is merely an exercise of the Supreme Court's supervisory jurisdiction over federal courts. We conclude that it is the latter and affirm the district court's judgment denying the petition.

## I

In August 1977, petitioner was tried for murder in the Circuit Court of Cook County, Illinois. Following closing arguments and instructions, the case was submitted to the jury for verdict at 1:10 p. m. on August 10. When no verdict was forthcoming, the trial judge on his own initiative recalled the jury at 7:06 p. m. and asked them if they could arrive at a decision. The foreman asked for at least another hour, and the trial judge then tendered them a modified *Allen*[1] charge and sent them back to their deliberations.

At 8:55 p. m., the trial judge received a note signed by the foreman indicating that the jury was unable to reach a verdict. After denying a defense request for a mistrial, the judge called out the jury and the following colloquy occurred:

The Court: Mr. Foreman, the Court has received your note. I am going to inquire of you, I don't want to know how the jury is voting, in which direction, but I would like to know the numerical count of your last ballot . . ., do you recall?

The Foreman: The last ballot?

The Court: The last ballot, yes. But remember, I don't want—

The Foreman: Ten to two.

The Court: All right.

What we are going to do is, and this determination is not based upon the numerical count of your vote, that was just a matter of inquiry by the Court. What we are going to do is arrange for overnight accommodations for the jury so that you, as you know, you can't be separated during the period of your deliberations, and so we are going to arrange an overnight accommodations (sic) at a motel which we have already begun to arrange for.

The trial court then denied another defense request for a mistrial.

At 2:55 p. m. on the following day, some eighteen hours after the trial judge's inquiry, the jury informed the court they had reached a verdict. Following the denial of another defense motion for mistrial, the jury informed the court they had found petitioner guilty of murder. Petitioner was later sentenced to between thirty-five and seventy years in the custody of the Illinois Department of Corrections.

Petitioner appealed his conviction to the Illinois Appellate Court, claiming that the trial judge had committed reversible error in questioning the jury regarding its numerical division. Although the appellate court agreed that the trial court's inquiry constituted error, it held that it was not reversible error and affirmed the conviction. *People v. Kirk*, 76 Ill.App.3d 459, 31 Ill.Dec. 835, 394 N.E.2d 1212 (1979). Leave to appeal further was denied by the Illinois Supreme Court, and a petition for a writ of *certiorari* was likewise denied by the United States Supreme Court. *Kirk v. Illinois*, 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980).

His available state remedies thus exhausted, petitioner filed for federal habeas corpus relief in the United States District

---

1. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed.2d 528 (1896).

Court for the Northern District of Illinois on the ground that the trial court's inquiry as to the jury's numerical division denied him a fair trial. The district court denied the petition, and this appeal followed.

## II

Petitioner contends that he is entitled to federal habeas relief under the rule of *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). In *Brasfield*, the Supreme Court reversed a number of convictions for violations of the National Prohibition Act on the ground that the trial court had improperly inquired of the jury how it was divided numerically when no verdict had been reached after several hours of deliberations. As in this case, the jury foreman informed the court of their numerical break-down without indicating whether the majority favored a guilty or not guilty verdict. The Court nevertheless condemned the practice of questioning the jury in this manner, stating:

> We deem it essential to the fair and impartial conduct of the trial that the inquiry itself should be regarded as ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

272 U.S. at 450, 47 S.Ct. at 135.

Although *Brasfield* involved a federal rather than state court conviction and the Court did not refer to any provision of the Constitution as the basis for its holding, petitioner argues that the strong language used by the Court in condemning the practice indicates that the rule against asking the jury where it stands numerically is of constitutional dimension. Whether or not the rule is constitutionally based is crucial in this case because, as a federal court reviewing a state conviction under 28 U.S.C. § 2254, the court is authorized to grant relief only if petitioner's conviction was "in violation of the Constitution or laws or treaties of the United States." Thus, if the *Brasfield* rule is not required by the Constitution, but instead represents merely an exercise by the Supreme Court of its supervisory authority over procedures to be followed in the lower federal courts, petitioner is not entitled to habeas corpus relief.

In support of his contention that the rule is mandated by the Constitution, petitioner cites *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). There the Court was required to decide whether the federal rule governing the time when jeopardy attaches in a jury trial is mandated by the Constitution or whether states are free to apply their own rules in evaluating double jeopardy claims. The Court held that because the federal rule is an integral part of the constitutional guarantee against double jeopardy, it is binding on the states. Petitioner argues that because the *Brasfield* rule is likewise an integral part of the Sixth Amendment guarantee to a jury trial, it too must be constitutionally mandated.

█ Admittedly, if the rule against inquiring as to the jury's numerical division were, as the Supreme Court seemed to say in *Brasfield*, "essential to the fair and impartial conduct of the trial," the court would be constrained to find it constitutionally required. For there can be no doubt that the Fourteenth Amendment guarantees to all persons accused of a crime the right to a fundamentally fair trial. *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976). If in fact a rule prohibiting certain conduct at trial is essential to that right, then it too must be

considered of constitutional stature. The question the court faces then is whether the *Brasfield* Court's characterization of its holding as "essential" to a fair trial must be taken literally.

At least two circuits have taken the position that it should not. The Fourth Circuit in *Ellis v. Reed*, 596 F.2d 1195 (4th Cir.), *cert. denied*, 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1979), and the Eighth Circuit in *Cornell v. State of Iowa*, 628 F.2d 1044 (8th Cir. 1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 944, 67 L.Ed.2d 112 (1981), have both held that the rule of *Brasfield* rested on the Supreme Court's supervisory jurisdiction over the federal court system and therefore is not binding on the states.[2] In reaching this decision, both courts relied in part on the Court's earlier opinion in *Burton v. United States*, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482 (1905), in which the issue first arose.

*Burton* also involved a federal conviction obtained after the trial judge had inquired as to the jury's numerical division. Although the Court ultimately reversed the conviction on other grounds, it criticized the trial judge's inquiry, stating:

> Such a practice is not to be commended, because we cannot see how it may be material for the court to understand the proportion of division of opinion among the jury. All that the judge said in regard to the propriety and duty of the jury to fairly and honestly endeavor to agree could have been said without asking for the fact as to the proportion of the division, and we do not think that the proper administration of the law requires such knowledge or permits such a question on the part of the presiding judge.

196 U.S. at 307–308, 25 S.Ct. at 250.

Despite the Court's criticism of the practice in *Burton*, federal trial judges continued to make such inquiries when juries appeared deadlocked, and a split in the circuits developed over whether such an inquiry constituted reversible error or wheth-

er *Burton* was merely hortatory. It was to this situation that the Court in *Brasfield* addressed itself, and it was no doubt because of the failure of the federal courts to heed its earlier admonition in *Burton* that Justice Stone was so forceful in his condemnation of the practice. As the Court's initial discussion of the issue in *Burton* indicates, however, the basis for the Court's ruling was not the Constitution, but rather its concern and authority over "the proper administration of the law" in federal courts. 196 U.S. at 308, 25 S.Ct. at 250.

In *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), the Supreme Court was faced with a similar question involving a state trial court's use of a jury instruction almost universally condemned by federal courts. The instruction, which stated that every witness is presumed to tell the truth, had been uniformly rejected by federal courts on the ground that it impinged upon a criminal defendant's presumption of innocence. Although no constitutional authority had been needed for the federal appellate courts to prohibit the use of this instruction in the federal courts, the Ninth Circuit concluded in *Naughten* that because the instruction improperly shifted the burden of proof to a defendant, its use was also barred in state courts under the Due Process Clause of the Fourteenth Amendment. The Supreme Court reversed, holding that the federal rule was simply an exercise of the appellate courts' supervisory authority over lower federal courts and, as such, was not binding on the states. Writing for the majority, Justice Rehnquist stated:

> Thus even substantial unanimity among federal courts of appeals that the instruction in question ought not to be given in United States district courts within their respective jurisdictions is not, without more, authority for declaring that the giving of the instruction makes a resulting conviction invalid under the Fourteenth Amendment. Before a federal

---

2. State courts, on the other hand, are divided on the question of whether such an inquiry is sufficiently coercive to warrant an exercise of their own supervisory authority prohibiting it. *See* Annot., 77 A.L.R.3d 769 (1977).

court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.

414 U.S. at 146, 94 S.Ct. at 400.

In determining whether the "presumption of truthfulness" instruction in fact violated any right guaranteed by the Fourteenth Amendment, Justice Rehnquist went on to view that instruction in the context of the overall charge to the jury and concluded that it did not deprive the petitioner of a fair trial.

Here also, it cannot be said that the mere inquiry by the trial judge as to the jury's numerical division resulted in an unfair trial. The danger with such an inquiry, as *Brasfield* makes clear, is that it may tend to coerce hold-out members of the jury into relinquishing their own views so that a unanimous verdict can be obtained. As *Brasfield* also makes clear, however, the inquiry is not inherently coercive; its effect upon a divided jury depends upon circumstances surrounding the case. 272 U.S. at 450, 47 S.Ct. at 135. It was only because the effects of such an inquiry are often difficult to determine that the Court adopted a *per se* rule in *Brasfield* prohibiting the inquiry altogether. But while this difficulty in determining actual prejudice may make an outright ban on the inquiry itself entirely reasonable, it does not make such a rule constitutionally mandated.

■ We conclude therefore that the rule of *Brasfield* is based not on the Constitution but on the Supreme Court's supervisory jurisdiction over federal courts. As such, it is not binding on the states, and the trial judge's failure to follow that rule here does not by itself entitle petitioner to federal habeas corpus relief.

Of course, this is not to say that an inquiry by the trial judge into the jury's numerical standing can never result in the unconstitutional coercion of the jury for which habeas relief would be available.

There may well be cases where a review of the entire record leaves one with the overwhelming impression that the trial judge's inquiry did in fact coerce the jury. Where this occurs, a petitioner would be entitled to relief. But this is not such a case. Here, petitioner has made no attempt to show actual coercion. His argument instead is that the mere fact that the inquiry was made entitles him to relief. We are unable to accept such a claim as a matter of constitutional law particularly where, as here, the allegedly coerced verdict was not obtained until some eighteen hours after the challenged inquiry. The judgment of the district court is affirmed.