Alford RAY, Appellant,

v.

The STATE of Texas, State.

No. 2–82–099–CR.

Court of Appeals of Texas, Fort Worth.

March 30, 1983.
Discretionary Review Refused July 6, 1983.

Law Offices of Jack W. Beech and Jack W. Beech, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Don Hase, Asst. Dist. Atty., Fort Worth, for State.

Before HUGHES, ASHWORTH and BURDOCK, JJ.

## OPINION

ASHWORTH, Justice.

Appellant appeals from a conviction of possession of a controlled substance, heroin. After enhancement for two prior felony convictions, the trial court set punishment at confinement for life in the Texas Department of Corrections.

Affirmed.

It is appropriate to briefly review some of the testimony before addressing appellant's grounds of error. Appellant and Billy George Brown were observed in the vicinity of the Convention Center Hotel in Fort Worth, Texas, between 10:30 and 11:00 a.m., on February 27, 1981 by Shela Blevins, a security guard for the hotel. Blevins observed a sack in appellant's possession which contained a hotel ice tray. Upon confrontation by Blevins, appellant emptied the sack which contained the hotel ice tray, hotel towels, two glass flasks, and some cotton balls and alcohol. Blevins inspected a bank pouch which Brown had with him,

and discovered it contained a large sum of money (at least $10,000.00). Blevins stated that he was going to call the police, and appellant started running.

David Mark Sheridan was a parking lot attendant for the hotel. When appellant started running, Sheridan started chasing him. In the process of the chase, Sheridan alerted Oliver Gerard Brumfield, who was a Traffic Control Specialist for the City of Fort Worth, and who wore a uniform similar to that of a police officer. Brumfield joined in the chase and saw appellant reach into his coat pocket and pitch a clear plastic bag into the doorway area of a building. The chase continued for about two more blocks; Brumfield told Sheridan to continue the chase. Brumfield then went back to the location of the bag; it was in the same place where thrown, and there were no other persons in the immediate location.

Brumfield turned the bag over to Fort Worth Police Officer Pricer, who turned the bag over to the Fort Worth Police Crime Laboratory. Robert D. Burris testified he was a criminalist for the City of Fort Worth, and that the capsules in the bag contained heroin.

Appellant testified he ran because he thought he was being "set up"; he didn't throw anything away and that he never saw Brumfield. He further testified that he had two prior felony convictions for felony theft, committed while he was a drug addict.

■ Appellant's first ground of error relates to a portion of the State's final argument which was objected to as being outside the record; the objection was overruled. That portion of the argument objected to is as follows: "Mr. Blevins told you about the—about Billy George Brown's money. He told you about the paraphernalia, and somehow Mr. Beech (appellant's attorney) has the audacity to come in here and accuse Sheila (sic) Blevins of taking $5,000 or whatever it was. Mr. Blevins, quite frankly, is a man that might have more business in a hospital room rather than a courtroom. He came in here to try

to see right things done, not to cover up some $5,000.

MR. BEECH: Your Honor, we object to that being outside the record. What his purpose of coming here was, we don't know that.

THE COURT: I'll overrule the objection. You may continue, Counsel."

Blevins had testified that Brown had about $15,000.00 on his person when Blevins called the police. Officer Pricer testified that he turned over $10,000.00 to the Police property room. There is no explanation in the record for the $5,000.00 discrepancy.

We hold that the State's argument about Blevins and the $5,000.00 was invited by appellant's argument in pertinent parts as follows: "Now, Mr. Blevins tells you there was $15,000 there in Mr. Brown's presence. Now who got the $5,000? Only ten thousand got down to the police station. Now $5,000 disappeared somewhere. Now did Mr. Blevins get it or did Officer Pricer?. . . That's where the reasonable doubt comes when you start having these kind of things happen in cases. When, you know, $5,000 disappears. Now that Mr. Blevins wouldn't sell out for the price of those trays, but did he for $5,000? I don't know." We note that the only testimony about Brown having about $15,000.00 in his possession came from Blevins himself.

■■■ The argument questioning if Blevins had "sold out" for $5,000.00 invited response from the State. The invited argument rule permits prosecutorial argument outside the record in response to defense argument which goes outside the record, so long as the prosecutor does not stray beyond the scope of the invitation. *Johnson v. State*, 611 S.W.2d 649 (Tex.Cr.App.1981). To further counter appellant's argument, the State argued, "Mr. Blevins, quite frankly, is a man that might have more business in a hospital room rather than a courtroom." There was testimony from Blevins that he was in very poor health and had been forced to take medical disability retirement. We hold that this testimony warranted the State's argument about a hospital room being a more appropriate environment than a courtroom, and was not outside the record.

■■ The State's argument that "He came in here to try to see right things done, not to cover up some $5,000", was outside the record. However, we hold this' was invited, and in addition was not so manifestly improper, harmful, and prejudicial as to constitute reversible error. *Basaldua v. State*, 481 S.W.2d 851 (Tex.Cr.App.1972).

■■ Appellant's second ground of error complains of hearsay testimony given by Officer Pricer to bolster the testimony given by Traffic Specialist Brumfield. The objectionable testimony consisted of statements Pricer testified were made to him by Brumfield immediately after the chase. A series of leading questions calling for hearsay were addressed to Officer Pricer and he was allowed to respond over objection. The testimony elicited was to the effect that when they first came in contact, Brumfield told Pricer that Sheridan had shouted to him to get that guy; that he began to follow the suspect; that he observed the suspect reach inside his coat with his right hand; that he crouched on the ground as he thought the suspect was going to pull a weapon; that he watched the suspect move something from his pocket and place it in his left hand; that he observed the suspect throw a clear plastic bag to the sidewalk at Second and Commerce; that he followed the suspect a few more yards as he watched him run eastbound on First Street; that there were no other similar bags in that area; that after running a short distance up the street he came right back to the location where he had seen the bag.

All of this testimony was patently leading, hearsay testimony elicited for the purpose of bolstering the testimony of Brumfield. It would clearly be inadmissible if not offered as prior consistent statements for the purpose of bolstering an impeached witness. *Duncantell v. State*, 563 S.W.2d 252 (Tex.Cr.App.1978), *cert. denied*, 439 U.S. 1032, 99 S.Ct. 637, 58 L.Ed.2d 695 (1978). In examining the statement of facts, we find that Brumfield's testimony

was extensively impeached on almost his entire testimony. He admitted he told the Grand Jury a different version of the chase than he told the jury. He was impeached on how the chase proceeded, what he did when appellant reached into his coat, how the appellant was facing, what he threw and where it landed, what the building looked like, how long it was before he returned to the scene and in other details. In view of Brumfield's extensive impeachment of prior inconsistent statements, Pricer's testimony of Brumfield's prior consistent statements was admissible. *Duncantell v. State, supra.*

■ Appellant's third ground of error is that the court failed to charge the jury on circumstantial evidence.

In *Noah v. State,* 495 S.W.2d 260 (Tex.Cr.App.1973), an officer in a police car chased appellant's vehicle for approximately fifteen blocks at speeds up to 90 m.p.h. The officer saw appellant throw a package from the car and he swerved to avoid hitting it. Apparently after traveling another two blocks, appellant stopped after the officer fired a warning shot. Within three to five minutes after the appellant was placed in the custody of another officer, the pursuing officer returned to the place where the package had been thrown from the car and found it in the same position with no other packages in the area nor people about when he arrived. The court held that this constituted direct evidence and that a charge on circumstantial evidence was not required.

The only notable difference in *Noah v. State, supra,* and the instant case is that in *Noah,* there was no one around the site where the package had been thrown. In the instant case while there was testimony that a flagman from a construction project was in the vicinity, there was no evidence that anyone had been closer to the bag than across the street. The witness saw the bag thrown and land. Within a short period of time he promptly returned to retrieve it and found it in the same place he saw it land. There was no evidence that some third party had tampered with it while it was out of his sight. This testimony consti-

tutes direct evidence which may be considered by the jury and a charge on circumstantial evidence is not necessary.

We also note that in *Harden Hankins v. State of Texas,* No. 60,914 (Tex.Cr.App., March 1, 1983) (not yet reported), holds that a charge on circumstantial evidence is not required where the jury is properly instructed on the reasonable doubt standard. *Jesse De La Rosa v. State of Texas,* No. 68,976 (Tex.Cr.App., March 9, 1983), holds that the opinion in *Hankins v. State, supra,* should be applied retroactively.

■ Appellant's fourth ground of error is that the evidence is insufficient to exclude every reasonable hypothesis except the guilt of appellant. When the sufficiency of the evidence is challenged, this court is required to view the evidence in the light most favorable to the verdict. *Clark v. State,* 543 S.W.2d 125 (Tex.Cr.App.1976). Earlier in this opinion we have reviewed much of the evidence presented in this case, and applying the standard of *Clark v. State, supra,* we hold that the verdict is supported by the evidence.

■ Appellant's fifth ground of error is that the court erred in giving an "*Allen* charge" to the jury over appellant's objection. The jury began its deliberation at some time on May 13, 1982, and recessed for the day at 4:50 p.m. The deliberations resumed at 9:00 a.m. on May 14, 1982, and recessed for lunch from noon until 1:15 p.m. At 2:40 p.m. a note was sent to the court stating that the jury was deadlocked eleven to one.

The court sent the following instruction to the jury over appellant's objection:

"If this Jury finds itself unable to arrive at an unanimous verdict, it would be necessary for the Court to declare a mistrial and discharge the Jury.

The indictment will still be pending, and it is reasonable to assume that the case will be tried again before another Jury at some future time. Any such future Jury will be impaneled in the same way this Jury has been impaneled, and

will likely hear the same evidence which has been presented to this Jury.

The questions to be determined by that Jury will be the same questions confronting you and there is no reason to hope that the next Jury will find these questions any easier to decide than you have found them.

With this additional instruction, you are instructed to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the Jury, if you can do so without violation to your conscience."

At 4:33 p.m., the court called the jurors into the courtroom and each was asked, "Do you think further deliberations might prove fruitful?" Ten answered "yes", and two answered "no". Later that day, time unrecorded, a verdict of "guilty" was returned.

In *Arrevalo v. State,* 489 S.W.2d 569 (Tex.Cr.App.1973), the jury began deliberations on punishment at 10:00 a.m., October 14, 1971, recessed for the day at 5:20 p.m., returned the next day at 9:00 a.m., and returned its verdict at 9:30 a.m. At some time during its deliberations on October 14, 1971, the jury sent a note to the court stating it appeared they were a hung jury; eight to four. The court then instructed the jury to continue its deliberations and gave essentially the same instruction complained of in the instant case. *Arrevalo v. State, supra,* holds that the instruction did not coerce the jury, the jury was not held an unreasonable length of time, and there was no abuse of discretion by the court. Appellant's fifth ground of error is overruled.

Appellant's sixth ground of error is that the court erred in failing to grant a mistrial—the time for deliberation being in effect coercive.

In *Williams v. State,* 476 S.W.2d 300 (Tex.Cr.App.—1972), the appellant made a motion for mistrial after the jury had deliberated for six and one-half hours. The court called the jury into the courtroom to inquire about the status of the deliberations and possibility of a verdict, and asked for a show of hands to indicate those who felt further deliberations would be futile. One juror indicated a verdict could not be reached. The court sent the jury back for further deliberations, and a verdict was reached. On appeal, it was held that the court's comment could not be construed as coercive, and that the length of time that the jury may be held for deliberation rests largely in the sound discretion of the court. In the instant case the trial court did not abuse its discretion or coerce the jury in instructing the jury on the afternoon of May 14, 1982, to continue its deliberations. Appellant's sixth ground of error is overruled.

Judgment affirmed.