**Donald Eugene ODOM, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–83–352–CR.**

Court of Appeals of Texas,
Fort Worth.

Dec. 20, 1984.

Ward Casey, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Darrell Adkerson, Asst. Dist. Atty., Fort Worth, for State.

## OPINION

JOE SPURLOCK, II, Justice.

The appellant, Donald Eugene Odom, was convicted by a jury of the offense of aggravated robbery with a deadly weapon. TEX.PENAL CODE ANN. sec. 29.03(a)(2) (Vernon 1974). He entered a plea of "true" to the two enhancement paragraphs of the indictment. The trial court assessed punishment at confinement for thirty years in the Texas Department of Corrections.

On appeal, Odom contends in five grounds of error that (1) the trial court committed fundamental error when it inquired into the numerical division of the jury in its deliberations and that the trial court erred in; (2) refusing a mistrial after the jury foreman reported that the jury was divided "nine to three, nine guilty, three not guilty."; (3) giving an "Allen Charge" or "Dynamite Charge" to the jury; and (4) instructing the jury to retire to the jury room, take a vote and report back. In a fifth ground, he contends that the cumu-

lative effect of the complained of errors denied him due process and trial by jury as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution because the combined effect coerced the jury to return a verdict of guilty.

We affirm.

There is no challenge to the sufficiency of the evidence. However, in order to rule on each ground of error and to consider the "cumulative effect of the complained of errors", a discussion is necessary of the relevant facts occurring after the jury received the charge.

The record reflects that during the jury's deliberations at the guilt/innocence phase of the trial, the foreman sent several notes to the trial court. The first note stated that the jury believed it was hung and that no one was changing his opinion. Then the following proceedings occurred:

[Outside the presence of the jury]

THE COURT: Mr. Casey, if you have no objections, I propose to poll the jury and find how they're divided by numbers before we decide whether or not you want to ask for a mistrial.

MR. CASEY [defense counsel]: Okay

THE COURT: Okay

[The Jury is seated in the jury box and the following proceedings are had.]

THE COURT: Okay, Mr. Foreman, without telling me how you stand on guilt or innocence, how are you divided by numbers? Ten to two, eight to four—

THE FOREMAN: Nine to three, nine guilty, three not guilty.

THE COURT: Okay. Well, if you'll go back and continue deliberations, I'll see what the lawyers want to do in that regard. So you may be retired.

[The Jury is retired to the jury room and the following proceedings are had outside their presence.]

THE COURT: What is your pleasure, gentlemen? Are you going to let them continue?

MR. MEANS [Prosecutor]: Our motion is I think the court has had experi-

ence with deliberations, reaching a conclusion with numbers being split more than this jury displayed before the court. I don't think sufficient time has passed.

THE COURT: Okay

MR CASEY: We move for a mistrial.

THE COURT: Overruled. We will go about 4:15 and I'm going to give them the Allen charge if it's only nine to three.

After further deliberations, the foreman sent a second note to the court stating that "One person has changed their [sic] position." At 4:30 p.m., the trial court, with the consent of the parties, let the jury separate for the night. Neither we, nor the trial court, know if that meant the vote was 10–2 or 8–4.

At 9:00 the next morning, the trial court, outside the presence of the jury, announced its intention to give the jury an "Allen Charge." Appellant objected on the grounds that the "Allen Charge" would constitute additional instructions to the jury in violation of the Code of Criminal Procedure and that in light of the court's inquiring into the numerical division of the jury and being informed that the jury was voting nine for guilty and three for not guilty, the effect of the charge would be to coerce the minority members into changing their vote to guilty, thereby denying appellant a fair trial from a jury of his peers. The trial court overruled appellant's objection and, after noting that the jury had already deliberated a total of two hours and thirty-three minutes, more time than it took to put on the evidence in the case, the trial court directed that the jury be brought in. To the trial court's inquiry whether the jury was still split nine to three, the foreman answered "yes." The bailiff then read the following supplemental instruction to the jury:

If this jury finds itself unable to arrive at an unanimous verdict, it will be necessary for the Court to declare a mistrial and discharge the jury.

The indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be empaneled in the same way this jury has been empaneled and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be the same questions confronting you and there is no reason to hope the next jury will find these questions any easier to decide than you have found them.

With this additional instruction, you are requested to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury, if you can do so without doing violence to your conscience.

After the bailiff read the above, to the jury, the court admonished the jury as follows: "Don't do violence to your conscience, but continue deliberating."

The jury returned to the jury room to continue its deliberations. At some time prior to 10:07 that same morning, the foreman sent the court a third note which stated that "[t]he jury has not changed from first vote yesterday. (9–3)." At 10:07 the jury was returned to the jury box and the following proceedings occurred:

THE COURT: Mr. Foreman, are you still nine to three?

THE FOREMAN: Yes, sir.

THE COURT: Okay, do you think further deliberations would produce any results?

THE FOREMAN: It's possible. We're still having some deliberations in there.

THE COURT: Have you just taken a vote?

THE FOREMAN: Not within the last few minutes.

THE COURT: How about taking a vote and then report back.

THE FOREMAN: Okay

[The Jury is retired to the jury room and the following proceedings are had outside their presence.]

THE COURT: What is your objection?

MR. CASEY: Now comes the Defendant, Donald Eugene Odom, and objects to the oral instruction by the Court to the

Jury to retire to the jury room and instruct them to go vote again.

THE COURT: Okay, overruled.

MR. CASEY: Note our exception.

[At 10:12 a.m., the Jury is seated in the jury box and the following proceedings are had.]

THE COURT: Mr. Foreman, you have reached a guilty verdict?

THE FOREMAN: Yes, sir.

THE COURT: Let me call your names, ladies and gentlemen, and I'll ask you if this is your verdict.

MR. CASEY: Would you ask if it's their individual verdict?

[Each juror agreed the verdict was his individual verdict.]

■ In his first ground of error, Odom contends that the trial court committed fundamental error when it inquired into the numerical division of the jury in its deliberations. However, Odom failed to object to the trial court's polling the jury to determine how they were divided numerically and failed to object to the foreman's unresponsive answer in which he voluntarily informed the court on how the jury stood on guilt and innocence after being specifically instructed not to state how the jury stood on guilt or innocence. Therefore, as properly stated in his ground, Odom is limited to fundamental error only.

■ In support of his position, appellant relies on *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926) in which the Supreme Court of the United States held the mere inquiry by the trial court is error per se. This Court is not bound by *Brasfield* because the rule in *Brasfield* is limited to procedure in federal courts and is not binding on the states through the Fourteenth Amendment. *U.S. ex rel. Kirk v. Director, Department of Corrections, State of Illinois*, 678 F.2d 723 (7th Cir.1982). Odom has not cited a Texas case, nor have we found one, which makes the mere inquiry as to the numerical division of the jury reversible error per se. Appellant's first ground is overruled.

■ In his second ground, Odom contends the trial court erred in refusing a mistrial after the jury foreman reported that the jury was divided "nine to three, nine guilty, three not guilty." However, the record reflects that Odom failed to object to the foreman's unresponsive answer and, consequently, has failed to preserve error for review. Further, we do not find that the foreman's volunteered information on how the jury stood on guilt and innocence to be fundamental error. Appellant's second ground is overruled.

■ In his third ground, appellant contends that the trial court erred in giving the "Allen charge" to the jury after being informed that three minority jurors were voting for acquittal. *See Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). Although not clear, apparently, it is Odom's position that the "Allen charge" had a coercive effect upon the minority jurors to vote for guilt. He cites no Texas authority for his position.

In *Arrevalo v. State*, 489 S.W.2d 569, 571 (Tex.Crim.App.1973), the Texas Court of Criminal Appeals upheld an instruction containing language substantially similar to the instruction here challenged finding the instruction to be neither coercive nor a comment on the weight of the evidence. Further, this Court relying on *Arrevalo* previously upheld the same instruction as here challenged, finding that the instruction did not coerce the jury and that the trial court did not abuse its discretion in giving the instruction. *Ray v. State*, 649 S.W.2d 142, 147 (Tex.App.—Fort Worth 1983, pet. ref'd.). After the bailiff read the charge which requested the jurors to continue deliberations in an effort to arrive at a verdict that is acceptable to all the members of the jury, "if you can do so without doing violence to your conscience," the trial judge himself reiterated: "Don't do violence to your conscience, but continue deliberating." This instruction being approved previously, and having no authority cited requiring reversal, we overrule appellant's third ground of error.

In his fourth ground, Odom contends that the trial court erred in instructing the jury to take a vote and then report back. Again, Odom has merely pointed out what language may have been objectionable but fails to state specific grounds or reasons for the objection, *See McGowan v. State*, 664 S.W.2d 355 (Tex.Crim.App.1984). The general trial objection that defendant "objects to the oral instruction by the Court to the jury to retire to the jury room and instruct them to vote again" preserves nothing for review.

We do not condone the trial court's instruction to the jury to "vote again". However, the error if any, is not of enough significance to constitute fundamental error. In asking the jury to "vote then report back", the trial court was seeking to determine whether further deliberations would produce a verdict. The communication did nothing more than ask where the jurors stood. The Court of Criminal Appeals has uniformly held that a communication between the court and the jury, although not made in compliance with provisions of the statutes, which does not amount to an additional instruction by the court upon the law or some phase of the case, does not constitute reversible error. *McGowan v. State*, 664 S.W.2d at 358; *Arrevalo v. State*, 489 S.W.2d at 572. The complained of communication did not amount to an additional instruction upon the law or some phase of the evidence and, consequently we find no fundamental error, and overrule Odom's fourth ground of error.

In his fifth ground, Odom contends that the totality of the circumstances; i.e., inquiry of the jury as to numerical division; report by the jury foreman that nine jurors were voting guilty and three were voting not guilty; the giving of an "Allen" type charge; and the instruction to vote and report back, denied appellant due process and trial by jury as guaranteed by the Sixth and Fourteenth Amendments of the United States because the jury was coerced into returning a verdict of guilty. Appellant refers to *Jones v. Norvell*, 472 F.2d

1185 (6th Cir.1973), *cert. denied*, 411 U.S. 986, 93 S.Ct. 2275, 36 L.Ed.2d 964 (1973). We do not find *Jones* controlling because the instruction submitted to the deadlocked jury in *Jones* was *indeed coercive*, where here the opposite is true.

In *Jones* the state trial court was informed by a court officer not only that the jury was deadlocked, but that the jury stood eleven to one. The trial court then recited that division to the jury and asked whether the court officer's report of eleven to one was correct. On receiving a conditional affirmative, the trial court said "[I]t is your duty to reach a verdict if you can possibly do so—you twelve people are the only ones that can do it. The Court can't do it, nor anyone else. You twelve people are the only ones." Subsequently, the trial court ascertained that the jury majority was for guilty and sent them back to "see if you can make any progress. As I told you, it is your duty to decide the case, if you can do so." Thereupon within five minutes the jury returned a verdict of guilty. The Sixth Circuit Court considered the "totality of the circumstances" and found the appellant's constitutional right to a fair and impartial trial guaranteed by the Sixth and Fourteenth Amendments had been violated. *Jones*, 472 F.2d at 1186.

The instant case is distinguishable. With the approval of counsel, the trial court, after receiving a note to the effect the jury was hung, polled the jury to determine its numerical division. The fact that the jury foreman, contrary to the instructions of the court, volunteered to the court the jury's numerical division in reference to guilt and innocence did not preclude the trial judge from giving a proper *Allen* type charge. *Cf. Sanders v. United States*, 415 F.2d 621, 631–32 (5th Cir.1969), *cert. denied*, 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1970); and *United States v. Rao*, 394 F.2d 354, 356 (2nd Cir.1968) *cert. denied*, 393 U.S. 845, 89 S.Ct. 129, 21 L.Ed.2d 116 (1968). The charge given here by the trial court made it plain to the jurors that they were to try to arrive at a verdict acceptable to all members of the jury, *if* they could do so

without violating their consciences. There is nothing in the charge that is improper, or questionable. We find the court's action in giving the *Allen* type charge was not unduly coercive. See: *Potter v. State,* 481 S.W.2d 101 (Tex.Crim.App.1972).

The trial court's request to "take a vote and report back" was not coercive in that there was no implication that the court was expecting a verdict, but was merely interested in ascertaining how the jury stood numerically so that the court could determine whether a mistrial was appropriate. It is well settled that the length of time a jury deliberates is discretionary with the trial court. TEX.CODE CRIM.PROC. ANN. art. 36.31 (Vernon Supp.1984); *Garcia v. State,* 522 S.W.2d 203, 208 (Tex.Crim. App.1975). Considering the totality of the circumstances we find the appellant was not denied a fair and impartial trial as guaranteed by the Sixth and Fourteenth Amendments of the Constitution of the United States. Appellant's fifth ground is overruled and the judgment affirmed.

HILL, J., dissents.

HILL, Justice, dissenting.

I respectfully dissent, because, under the totality of the circumstances, the action of the trial judge, in giving a supplemental instruction to encourage a unanimous verdict, when he knew that the jury was split 9–3 for conviction, was so inherently coercive as to deprive the appellant of his right to a fair and impartial jury trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. *United States v. Sae-Chua,* 725 F.2d 530 (9th Cir.1984); *Jones v. Norvell,* 472 F.2d 1185 (6th Cir.1973); *People v. Santiago,* 108 Ill.App.3d 787, 64 Ill.Dec. 319, 439 N.E.2d 984 (1st Dist., 2nd Div. 1982).

The Supreme Court of California has stated that "[m]ost cases wherein adjuratory remarks of the court have been held coercive are those in which the court, either through its own questioning or through volunteered statements of jurors, has become informed not only as to the numerical division of the jury but also as to how many stand on each side of the ultimate issue of guilt.... The urging of agreement in such circumstances of course creates in the jury the impression that the court, which has also heard the testimony in the case, agrees with the majority of jurors. Coercion of the jurors in the minority clearly results." *People v. Carter,* 68 Cal.2d 810, 69 Cal.Rptr. 297, 442 P.2d 353, 357 (1968).

The United States Supreme Court has held that even the inquiry as to the jury's numerical split has a coercive tendency which affects the proper relations of the court to the jury, and that it is essential to the fair and impartial conduct of the trial that the inquiry by itself should be regarded as ground for reversal. *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). However, as noted by the majority, most jurisdictions and most federal circuits have held that the rule in *Brasfield* is an administrative rule which is only applicable to federal courts, and is not applicable to the states through the Constitution. One of the cases cited by the majority is the case of *U.S. ex rel. Kirk v. Director, Dept. of Correct.,* 678 F.2d 723 (7th Cir.1982), an opinion by the Seventh Circuit on Kirk's application for writ of habeas corpus. The opinion by the Illinois Court of Appeals upon the affirmance of Kirk's conviction argues that the reversal in *Brasfield* was probably not due to just the asking of the question, but was actually because of the combination of the circumstances of the inquiry as to jury division, coupled with an Allen charge. *People v. Kirk,* 76 Ill.App.3d 459, 31 Ill.Dec. 835, 394 N.E.2d 1212 (1st Dist., 4th Div.1979).

The majority cites two cases in which the conviction was affirmed although the judge had learned how the jury split and then had given the jury a supplemental instruction. These cases are *Sanders v. United States,* 415 F.2d 621 (5th Cir.1969) and *United States v. Rao,* 394 F.2d 354 (2nd Cir.1968). These cases are distinguishable from the case at bar in that neither case involved an inquiry by the trial judge as to the division

of the jury; in both instances the jury volunteered the information in a note. Had the judge inquired as to the division of the jury in those cases, as he did in this one, the cases would have been reversed under the *Brasfield* rule. If these cases are not distinguishable on this basis, I would differ with the holdings therein and would find, based on the authorities previously cited, that under the totality of the circumstances as outlined, the appellant was denied a fair and impartial jury trial, as guaranteed to him by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. I would sustain ground of error number five and reverse and remand for trial.

ASHWORTH and BURDOCK, JJ., join.