ACCEPTED
07-15-00094-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
8/4/2015 3:53:29 PM
Vivian Long, Clerk

*ORAL ARGUMENT REQUESTED*

*IN THE COURT OF APPEALS*
*FOR THE SEVENTH DISTRICT OF TEXAS*
*AT AMARILLO*

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
8/4/2015 3:53:29 PM
VIVIAN LONG
CLERK

*NO. 07-15-00094-CR*

*KRISTOPHER DONALD MIXON*
*Appellant,*
*V.*
*THE STATE OF TEXAS*
*Appellee.*
_____

*APPEAL FROM THE 251ST DISTRICT COURT*
*RANDALL COUNTY, TEXAS*

_____

*BRIEF FOR THE STATE OF TEXAS*

_____

> *JAMES A. FARREN*
> *CRIMINAL DISTRICT ATTORNEY*
> *RANDALL COUNTY, TEXAS*
>
> *WARREN L. CLARK*
> *SBN 04300500*
> *APPELLATE CHIEF*
> *ASST. CRIMINAL DIST. ATTORNEY*
> *Randall County Justice Center*
> *2309 Russell Long Blvd., Ste. 120*
> *Canyon, Texas 79015*
> *clarkwl3@gmail.com*
> *wclark@randallcounty.org*
> *806/468-5570*
> *806/468-5566 (fax)*
>
> *ATTORNEYS FOR THE STATE*

# *TABLE OF CONTENTS*

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATE'S COUNTERPOINTS

## *COUNTERPOINT NO. 1*

THE TRIAL COURT DID NOT ERR IN SUBMITTING A SUPPLEMENTAL JURY CHARGE TO THE JURY AFTER IT DECLARED ITSELF UNABLE TO REACH A UNANIMOUS VERDICT.

## *COUNTERPOINT NO. 2*

THE EVIDENCE IS LEGALLY SUFFICIENT TO PROVE THAT APPELLANT KNOWINGLY AND INTENTIONALLY POSSESSED METHAMPHETAMINE AND THE JURY'S VERDICT OF GUILT WAS A RATIONAL RESPONSE TO THIS EVIDENCE.

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

COUNTERPOINT NO. 1
    RESTATED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

COUNTERPOINT NO. 2
    RESTATED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

iii

## *INDEX OF AUTHORITIES*

| *CASES* | *PAGE* |
|---|---|

*Ball v. State*, No. 02-06-00268-CR
(Tex.App.-Fort Worth 2007) (not designated for publication) . . . . . . . . . 17

*Barnett v. State*, 189 S.W.3d 272
(Tex.Crim.App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bekendam v. State*, 441 S.W.3d 295
(Tex.Crim.App. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bell v. State*, 938 S.W.2d 35
(Tex.Crim.App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bledsoe v. State*, 21 S.w. 615
(Tex.App.-Tyler 2000, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Brown v. State*, 270 S.W.3d 564 (Tex.Crim.App. 2008)
*cert. denied*, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009) . . . . . . . . . . . . . . 20

*Brown v. State*, 911 S.W.2d 744
(Tex.Crim.App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Chase v. State*, 448 S.W.3d 6
(Tex.Crim.App. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Clark v. State*, 365 S.W.3d 333
(Tex.Crim.App. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,14

*Clayton v. State*, 235 S.W.3d 772
(Tex.Crim.App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Conner v. State*, 67 S.W.3d 192
(Tex.Crim.App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Davis v. State*, 709 S.W.2d 288
(Tex.App.-Corpus Christi 1986, pet. ref'd.) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Delijevic v. State*, 323 S.W.3d 606
(Tex.App.-Amarillo 2010, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . 11,14

*DeLuna v. State*, 711 S.W.2d 44
(Tex.Crim.App. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dewberry v. State*, 4 S.W.3d 735
(Tex.Crim.App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Evans v. State*, 202 S.W.3d 158
(Tex.Crim.App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Freeman v. State*, 115 S.W.3d 183
(Tex.App.-Texarkana 2003, pet. ref'd.) . . . . . . . . . . . . . . . . . . . . . 12-13,15

*Gear v. State*, 340 S.W.3d 743
(Tex.Crim.App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Guidry v. State*, 9 S.W.3d 133
(Tex.Crim.App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hernandez v. State*, 538 S.W.2d 127
(Tex.Crim.App. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Holmon v. State*, 474 S.W.2d 247
(Tex.Crim.App. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hooper v. State*, 214 S.W.3d 9
(Tex.Crim.App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Howard v. State*, 941 S.W.2d 102
(Tex.Crim.App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12,16

*Hurtado v. State*, 881 S.W.2d 738
(Tex.App.-Houston [1st Dist.] 1994, pet. ref'd.) . . . . . . . . . . . . . . . . . . . . . 23

*James v. State*, 264 S.W.3d 215
(Tex.App.-Houston [1st Dist.] 2008, pet. ref'd.) . . . . . . . . . . . . . . . . . . . . 24

*Jones v. State*, 986 S.W.2d 358
(Tex.App.-Beaumont 1999, pet. ref'd.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Joseph v. State*, 987 S.W.2d 374
(Tex.Crim.App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

*King v. State*, 895 S.W.2d 701
(Tex.Crim.App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Laster v. State*, 275 S.W.3d 512
(Tex.Crim.App. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lowenfield v. Phelps*, 484 U.S. 231 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lane v. State*, 909 S.W.2d 930
(Tex.App.-El Paso 1995, pet. ref'd.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Love v. State*, 909 S.W.2d 930
(Tex.App.-El Paso 1995, pet. ref'd.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Narvaiz v. State*, 840 S.W.2d 415
(Tex.Crim.App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Poindexter v. State*, 153 S.W.3d 402
(Tex.Crim.App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,24

*Porter v. State*, 873 S.W.2d 729
(Tex.App.-Dallas 1994, pet. ref'd.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Potter v. State*, 481 S.W.2d 101
(Tex.Crim.App. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stanton v. State*, 535 S.W.2d 182
    (Tex.Crim.App. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Swearingen v. State*, 101 S.W.3d 89
    (Tex.Crim.App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,21

*Temple v. State*, 390 S.W.3d 341
    (Tex.Crim.App. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,24

*Triplett v. State*, 292 S.W.3d 205
    (Tex.App.-Amarillo 2009, pet. ref'd.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Turro v. State*, 867 S.W.2d 43
    (Tex.Crim.App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*West v. State*, 121 S.W.3d 95
    (Tex.App.-Fort Worth 2003, pet. ref'd.) . . . . . . . . . . . . . . . . . . . . . . . . 12,15

## *STATUTES, CODES, SECONDARY SOURCES*

U.S. Const., amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Const., Art. V, § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Code Crim. Proc. Art. 36.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Texas Code Crim. Proc. Art. 38.04 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Texas Penal Code § 32.21(a)(1)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tex. R. App. P. 33.1(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,13,14

Tex. R. App. P. 38.1(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tex. R. Evid. 103 (a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Texas Health & Safety Code Ann. § 481.115(d)  . . . . . . . . . . . . . . . . . . . . . . . . 21

IN THE COURT OF APPEALS
FOR THE SEVENTH DISTRICT OF TEXAS
AT AMARILLO

NO. 07-15-00094-CR

_____

KRISTOPHER DONALD MIXON
Appellant,
V.
THE STATE OF TEXAS
Appellee.

_____

TO THE HONORABLE COURT OF APPEALS:

COMES NOW, THE STATE OF TEXAS in the above-styled and numbered cause and files this its brief in response to the brief of Appellant, KRISTOPHER DONALD MIXON, wherein Appellant appeals from a conviction for Possession of a Controlled Substance > 4 Grams < 200 Grams in the 251st District Court, Randall County, Texas, the Honorable Ana Estevez, presiding judge.

## *STATEMENT OF THE CASE*

On June 11, 2014, Appellant was indicted by the Randall County Grand Jury for the felony offense of possession of a controlled substance in an amount over four but under 200 grams. (C.R. 1: 19) Jury selection and trial commenced on October 20, 2014 and concluded the next day. The jury found Appellant guilty of the offense as charged in the indictment, (C.R. 1:96,114-116; R.R. 3:148) Having opted for the trial court to assess punishment, Appellant requested the preparation of a pre-sentence investigation after the conclusion of the punishment hearing. Accordingly, one was prepared and provided to the sentencing court and counsel for Appellant and the State. On December 16, 2014, the court re-convened the sentencing hearing where it received additional evidence. After both sides rested, the trial court formally imposed a sentence of eight (8) years confinement in the Texas Department of Criminal Justice, Institutional Division. (C.R. 1:114; R.R. 4:70)

Appellant filed his motion for new trial on December 22, 2015, followed up by an untimely amended motion for new trial on January 20, 2015. In any event, the December 22, 2014 motion for new trial was overruled by operation of law on March 2, 2015. His notice of appeal was timely filed on March 9, 2015. (C.R. 1:136) The required Certification of Defendant's Right of Appeal was filed earlier on December 16, 2014 upon imposition of sentence. (C.R. 1:102)

All references to the indictment, official motions and the like are contained in the Clerk's Record and will be referred to as C.R. 1 with designation of appropriate page or pages. All references to trial testimony or trial exhibits are contained in the Reporter's Record and will be referred to respectively as R.R. 3 or 4 (trial testimony) or R.R. 5 (exhibit volume).

## STATEMENT OF FACTS

In his effort to peddle the failed theory that he had been "set up" by his present/former girlfriend Belinda Treadway, Appellant consciously elicited a legion of her hearsay statements through the State's primary witness, Officer Jarrod Robertson, a twelve-year veteran of the Amarillo Police Department. Apart from an APD officer who established the chain of custody for the 6.85 grams of methamphetamine made the subject of the indictment and the chemist who attested to the chemical contents of State's Exhibit 19 (see R.R. 3: 105-06,108-09,123-26), the elements of the offense and circumstances surrounding Appellant's knowing and intentional possession of the methamphetamine in question on November 4, 2012 were developed through the direct, cross-examination and re-direct examination of Officer Robertson. Thus, the State's case was streamlined considerably and this shall aid the narrative's flow.

Robertson, after being dispatched to 7002 Imperial in Amarillo, Texas in reference to the 9-1-1 hang-up call, was met at the front door by Treadway. She self-reported that she resided there with Appellant as his girlfreind. Appellant's sister owned the residence but only she and Appellant lived there. (R.R. 3:23-25) Upon Robertson's contact with Treadway, she immediately shared some "suspicions" harbored about Appellant. Knowing that his dispatch had been initiated by

4

Treadway's 9-1-1 hang-up call and now informed of Treadway's disclosure about these "suspicions" concerning Appellant, Robertson requested verbal consent from both parties to search the residence. Each consented. (R.R. 3:27) Officer Robertson also mentioned his desire to include the search of a detached building in the backyard to the residence. Appellant gave his consent to Robertson for that search as well. (R.R. 3:28) This consent was initially verbal ("Sure . . . yeah") but was subsequently reduced to writing. (R.R. 3:29,31; R.R. 5: State's Exhibit 3).

Robertson conducted a search of the detached building first before he commenced any search of the residence. Although Appellant had described the structure as a garage, Robertson did not see any vehicles parked within; instead, it appeared to serve as a workshop. (R.R. 3:28) Robertson later discovered another building attached to the house which served as a garage. (R.R. 3:29) Upon discovering the door leading into the detached building was locked, Robertson was provided a key for entry by Appellant. (R.R. 3:32)

Upon entry into the detached structure, Robertson conducted a preliminary search to determine if there were any other individuals inside. He testified that he did so based on Treadway's initial comments made when he first made contact with her. No one else was inside the building. Once he determined that the detached structure was unoccupied, he went back inside the residence to conduct a more extensive

search within. (R.R. 3:34-35)

However, before he could commence this search, Treadway brought Robertson a white box which was filled with drug paraphernalia, consisting of various hypodermic needles, pipes and spoons. (R.R. 3:35; R.R. 5: State's Exhibits 4-7) Among the paraphernalia was a baggie of crystalline substance which Robertson believed to be methamphetamine. (R.R. 3:36; R.R. 5: State's Exhibit 6) At this time, Appellant had not been taken into custody or placed under arrest. (R.R. 3:37)

As Robertson rifled through the various drug-related objects in the white box, he asked Appellant if he was a diabetic. Appellant denied such. Robertson also asked Appellant what the substance contained in the baggie was. Appellant replied: "Probably meth." (R.R. 3:47-48) Robertson next began his sweep and search of the bedrooms in the residence. He found drug paraphernalia in the northeast and southeast bedrooms. Within this southeast bedroom, described by Robertson as more along the line of an office, he came across a leather-like case on top of a bookcase which contained several pieces of glassware and glass tubing. In the officer's opinion, these were customarily used for smoking methamphetamine. (R.R. 48-50; R.R. 5:State's Exhibits 8 & 9) Robertson also noted that there were security cameras on the exterior of the residence with some cameras directed toward the front entrance to the house. The southeast bedroom - the one which had all the appearances of an

6

office - served as the room set up to monitor the incoming feed from these security cameras. (R.R. 3:52)

Following this residential search and after noting his observations, Robertson then turned his attention to the detached building. He described the layout of the structure, best illustrated by the photographs he took as depicted in State's Exhibits 10-12. (R.R. 3:53-54; R.R. 5) He extended his search to the attic where he discovered and seized additional paraphernalia. (R.R. 3:55) Continuing his search within the shed, Robertson found a set of scales resting on a chair (State's Exhibit 13), a black digital scale resting on a table alongside a toolbox (State's Exhibit 17) and a green change purse (State's Exhibits 15) (R.R. 3:57-59). Within the change purse, Robertson found a large cellophane wrapper containing a substance which he believed to be methamphetamine, subsequently confirmed by chemical analysis. (State's Exhibit 16). Further search of the workroom area turned up a drawer full of additional glass pipes with some residue. (R.R. 3:58-59; R.R. 5:State's Exhibit 18).

After Robertson had amassed the items seized during his consensual search throughout the house and workroom - the box of drug paraphernalia, the baggie of crystalline substance suspected of containing methamphetamine and multiple pieces of glassware specifically designed for drug use - he placed Appellant under arrest and took him into custody. (R.R. 3:62-63) Appellant later agreed to an oral interview in

which he made several admissions concerning methamphetamine use, albeit shifting blame onto Treadway (i.e., "we both use," ". . . it's not all me. . . she is trying to blame me for *everything*.") (R.R. 5:State's Exhibit 20 [DVD]) (emphasis added) The DVD was played in its entirety for the benefit of the jury. (R.R. 3:69)

Whereas Appellant's cross-examination of Robertson focused primarily on Treadway's drug use and ready access to all areas of the house, concession was made that Appellant was the "primary resident" of the residence at 7002 Imperial. (R.R. 3:74) And while Robertson acknowledged that Treadway's behavior at that time was consistent with someone who was "tweaking" (acting paranoid, shaking, exhibiting pressurized speech and obvious signs of fatigue from lack of sleep, most likely brought on from methamphetamine deprivation), he also conceded that Appellant did not show similar symptoms. (R.R. 3:83-84) While Treadway had "assisted" Robertson in his search, the officer pointed out that she did not tell him that there were drugs in the workroom; nor did she direct him to the location where these drugs were found. (R.R. 3:92-93) Robertson acknowledged that both Appellant and Treadway admitted to methamphetamine use and that she too had been charged with felony possession of methamphetamine arising out of the events at 7002 Imperial. (R.R. 3:84,98,117-18; R.R. 5:Defendant's Exhibits 1 & 2)

## *COUNTERPOINT NO. 1 RESTATED*

THE TRIAL COURT DID NOT ERR IN SUBMITTING A SUPPLEMENTAL JURY CHARGE TO THE JURY AFTER IT DECLARED ITSELF UNABLE TO REACH A UNANIMOUS VERDICT.

## *STATEMENT OF FACTS*

The State adopts and incorporates herein by reference for all purposes the facts previously set out in the "Statement of Facts" section of this brief at pages 4-8.

## *SUMMARY OF THE ARGUMENT*

In a multifarious point of error, Appellant claims that the trial court committed reversible error in providing the jury with an *Allen* charge after notice that it was deadlocked. To bolster this claim of error, he argues that the *Allen* charge deprived him of a fair and impartial trial as guaranteed by the Sixth Amendment to the United States Constitution and Article V, Section 10 of the Texas Constitution. Lastly, he proposes that the proper standard for evaluating harm is *Almanza* charge error. The State shall treat these three sub-issues under a single counterpoint.

As shall be demonstrated below, the trial court was well within its discretion when it provided the jury with a non-coercive *Allen* charge. Insofar as any Sixth Amendment or state constitutional deprivation which might have arisen from implementation of the *Allen* charge, Appellant failed to preserve these complaints on

9

appeal because they do not comport with the objection he made at trial. He has likewise wholly failed to adequately argue and brief this sub-issue pertaining to these alleged constitutional violations and as a result, nothing is presented for review. Finally, the suggestion that harm is gauged by application of *Almanza* charge error analysis is incorrect. Established law holds that the trial court's submission of an *Allen* supplemental charge is evaluated under the traditional abuse of discretion standard as opposed to an *Almanza* review.

## *ARGUMENT*

## *I.*

### *The law on error preservation and waiver*

As an initial matter, this Court must decide if Appellant has preserved error. The basic principle of error preservation holds that the complaining party must let the trial judge know what he wants and why he thinks he is entitled to it. He must do so clearly enough for the judge to understand and at a time when the trial judge is in a position to do something about it. *Chase v. State*, 448 S.W.3d 6, 11 (Tex.Crim.App. 2014); *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex.Crim.App. 2014).

To preserve error, the party must make the trial court aware of the grounds for the motion or objection. A timely objection must be made that states the grounds "with sufficient specificity to make the trial court aware of the complaint, unless the

10

specific grounds were apparent from the context[.]" TEX. R. APP. P. 33.1(a)(1)(A); see also TEX. R. EVID. 103(a)(1)(B). Constitutional errors can be forfeited if a party fails to properly object. *Clark v. State*, 365 S.W.3d 333, 339 (Tex.Crim.App. 2012). The two main purposes of requiring a specific objection are to inform the trial judge of the basis of the objection so that he has an opportunity to rule and to allow opposing counsel to remedy the error, should there be one. *Id.* Appellate courts may not reverse a trial court's ruling on any theory or basis that might have been applicable to the case but was not raised. *Id.* at 336.

As a final matter pertaining to preservation, the appealing party is required to include "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." See TEX. R. APP. P. 38.1(i); *Delijevic v. State*, 323 S.W.3d 606, 608 (Tex.App.-Amarillo 2010, no pet.) Failure to cite to authority and present argument constitutes inadequate briefing and presents nothing for review. *Id.*

## *II.*

### ***The law on jury deliberations and Allen charges***

The decision regarding whether to require a jury to continue deliberating lies within the sound discretion of the trial court. See TEX. CODE CRIM. PROC. art. 36.11; *Guidry v. State*, 9 S.W.3d 133, 155 (Tex.Crim.App. 1999); *Howard v. State*,

11

941 S.W.2d 102, 121 (Tex.Crim.App. 1996); *Bell v. State*, 938 S.W.2d 35, 56 (Tex.Crim.App. 1996); *DeLuna v. State*, 711 S.W.2d 44, 48 (Tex.Crim.App. 1986). The trial court is not obligated to declare a mistrial at the first sign of jury impasse. *See Howard*, 941 S.W.2d at 121.

An *Allen* charge is a supplemental charge sometimes given to a jury that declares itself deadlocked. *Barnett v. State*, 189 S.W.3d 272, 277 n. 13 (Tex.Crim.App. 2006). It reminds the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending and there is no guarantee that a second jury would find the issues any easier to resolve. *Id.* Such a charge is permissible in Texas courts. Nevertheless, trial courts are cautioned that it must word and administer this supplemental charge in a non-coercive manner. *Id.*; *also see Howard*, 941 S.W.2d at 102, 123-24. An *Allen* charge is unduly coercive and improper only if it pressures jurors into reaching a particular verdict or conveys the court's opinion of the case. *West v. State*, 121 S.W.3d 95, 108–09 (Tex.App.-Fort Worth 2003, pet. ref'd.).

When reviewing an *Allen* charge, the "primary inquiry" is to determine the charge's "coercive effect on juror deliberations 'in its context and under all circumstances.'" *Howard*, 941 S.W.2d at 123 (quoting *Lowenfield v. Phelps*. 484 U.S. 231, 237, 108 S.Ct. 546, 550 (1988)); *Freeman v. State*, 115 S.W.3d 183, 186-87

(Tex.App.-Texarkana 2003, pet. ref'd.). A charge that speaks to the jury as a whole, instead of specifically addressing a minority of the jurors, and which encourages jurors to re-examine their views or change their opinions without "surrendering honest convictions" is not coercive on its face. *Freeman*, 115 S.W.3d at 187. If the *Allen* charge is not coercive on its face, an appellant has the burden to show that jury misconduct occurred in fact. *Bledsoe v. State*, 21 S.W.3d 615, 623 (Tex.App.-Tyler 2000, no pet.); *Love v. State*, 909 S.W.2d 930, 936 (Tex.App.-El Paso 1995, pet. ref'd.); *Davis v. State*, 709 S.W.2d 288, 291 (Tex.App.-Corpus Christi 1986, pet. ref'd.).

## *II.*

### *Application of law to the facts*

*Constitutional claim not preserved; inadequate briefing*

As a preliminary matter, Appellant failed to preserve any constitutional objection to the subject supplemental charge. His perfunctory objection to the *Allen* charge (" . . . I just need to object . . . I will object . . ." (*see* R.R. 3:145)) did not include any reference to either the United States or Texas Constitution. Moreover, the content of this constitutional complaint is not apparent from the actual objection made at trial. For that matter, Appellant's general objection arguably failed to meet even the minimal requirement of TEX. R. APP. P. 33.1(a)(1)(A). Thus, this Sixth

13

Amendment challenge, related state constitutional objections and argument included within his brief do not comport with Appellant's objection at trial. As a result, his general objection has not been preserved for review. TEX. R. APP. P. 33.1(a); *Clark v. State*, 335 S.W.3d at 336, 339. Parenthetically, Appellant's utter failure to cite to any relevant case law or otherwise include any substantive argument in support of his constitutional claims constitutes inadequate briefing which ultimately presents nothing for review. *Delijevic v. State*, 323 S.W.3d at 608. And even if Appellant has preserved error, the trial court was well within its discretion when it gave the *Allen* charge as will be demonstrated below.

*Supplemental charge was proper and non-coercive*

In this case, the jury retired to deliberate on the issue of guilt-innocence at 10:38 a.m. At 2:05 p.m., the trial court received a note indicating that the jury could not reach a decision. At this juncture, the trial court announced to both counsel for Appellant and the State that it would prefer to bring the jury into open court and read the *Allen* charge before sending it back in for further deliberations. The trial court then read the entirety of its proposed *Allen* charge to the lawyers and entertained objections from either side. (R.R. 3:143-45) Overruling Appellant's non-specific objection, the trial court then brought the jury into open court, read the *Allen* charge and instructed it to continue its deliberations. (R.R. 3:145-47) The jury was provided

14

with a copy of the supplemental charge after its recitation in open court. (See C.R. 1:97-98) The jury returned with its guilty verdict at 3:26 p.m. (R.R. 3:147)

As noted by Appellant, the *Allen* charge given to the jury "essentially conforms to those routinely given in courts across this State and which have in large part left undisturbed by appellate courts." (Appellant's Brief at p. 13). This is no insignificant concession. Indeed, its language addressed the jury as a whole and did not single out any specific juror or jurors. It simply encouraged the jury to reach a verdict and asked the jurors to re-examine their views of the evidence and accompanying opinions. A trial court may properly encourage jurors to re-examine their own views and, while not surrendering their honest convictions, to change their opinions if convinced from the evidence that they are erroneous. *accord Jones v. State*, 986 S.W.2d 358, 362 (Tex.App.-Beaumont 1999, pet. ref'd.). An instruction that a mistrial would have to be declared is not, of itself, coercive. *Stanton v. State*, 535 S.W.2d 182, 183 (Tex.Crim.App. 1976). Close examination of the instant *Allen* charge demonstrates that it is identical to the ones given in *West v. State*, 121 S.W.3d at 109 and *Freeman v. State*, 115 S.W.3d at 187, both of which were held to be non-coercive. Simply put, nothing in the instruction itself was coercive. *West* at 109. The supplemental instruction passes muster.

Further, since the reviewing court must examine the propriety of the *Allen*

15

charge under all of the existing circumstances existing at the time, it is right and proper to consider the actual amount of time that the jury had been in deliberations as contrasted with the time it took to present the case. The jury had been deliberating for under four hours prior to receipt of the foreman's note indicating deadlock. The State's case-in-chief had progressed over a two-day period. Confining a jury's deliberations to a mere four hours or so under these circumstances was an option that the trial court was wise to reject, opting instead to encourage the jury to resolve its differences without doing violence to each juror's conscience.

Taking this examination "of all circumstances" one step further, this Court and the parties are in no position to determine exactly how much time within this time frame had been taken up with actual deliberations as opposed to periods of inactivity due to breaks or lunch. Just as the time a jury deliberates rests upon the sound discretion of the trial court, it was likewise not obligated to declare a mistrial at the first sign of an impasse. *Howard*, 941 S.W.2d at 121. And contrary to Appellant's heated assertions that the jury was "unequivocally" deadlocked with little reason to believe the it had not yet had time to consider all of the evidence before announcing its deadlocked status, the record does not bear this out. Appellant reads too much into the note actually tendered to the trial judge. It was in a superior position to determine whether additional deliberations were in order, particularly since the note did not

16

indicate that the jurors believed that a verdict could *not* be reached.

Indeed, given the time differential here, the trial court's decision to give the *Allen* charge was eminently reasonable, particularly when compared to what has occurred under very similar circumstances. *See, e.g., Potter v. State*, 481 S.W.2d 101, 106 (Tex.Crim.App. 1972) (providing *Allen* charge after four hours of deliberations not error); *cf. Holmon v. State*, 474 S.W.2d 247, 249 (Tex.Crim.App. 1972) (concluding eight hours of deliberations following one-hour punishment hearing not excessive and did not result in coerced verdict). The propriety of the instant supplemental instruction is additionally enhanced when contrasted with an *Allen* charge provided under similar circumstances which specifically addressed those jurors in the minority, urging them to listen "with a disposition to being convinced to the arguments of the other jurors . . . [and] consider whether they [minority jurors] are basing their opinions on speculation or guesswork, and not on the evidence in the case." There, the reviewing court held that the particular instruction in question was not improperly coercive since it did not tell the jury that either side possessed superior knowledge and that the jury should try to reach "a verdict acceptable to all jurors only if it could do so 'without doing violence to your conscience.'" *Ball v. State*, No. 02-06-00268-CR *11 (Tex.App.-Fort Worth 2007) (not designated for publication).

Given that the supplemental charge in question is non-coercive on its face,

17

Appellant has the burden to show that jury coercion actually occurred. In this, he has presented no evidence of coercion caused by the combined effect of the *Allen* charge and receipt of a guilty verdict a little more than an hour later. He simply speculates that the combined effect of the two circumstances created coercion. Although he was provided the opportunity to explore this issue, he failed to develop a sufficient record through his motion for new trial. In the absence of any evidence of coercion, it cannot be concluded that the trial court abused its discretion by its presentation of the *Allen* charge to the jury under these specific circumstances.

Appellant's point of error is without merit and should be overruled.

### *COUNTERPOINT NO. 2 RESTATED*

THE EVIDENCE IS LEGALLY SUFFICIENT TO PROVE THAT APPELLANT KNOWINGLY AND INTENTIONALLY POSSESSED METHAMPHETAMINE AND THE JURY'S VERDICT OF GUILT WAS A RATIONAL RESPONSE TO THIS EVIDENCE.

### *STATEMENT OF FACTS*

The State adopts and incorporates herein by reference for all purposes the facts previously set out in the "Statement of Facts" section of this brief at pages 4-8.

### *SUMMARY OF THE ARGUMENT*

Appellant contends that the evidence is legally insufficient because the record presents a mere "collection of potential linking factors" that serve only to raise

suspicion but which are inadequate, on their own, to provide the necessary "links" between Appellant and the methamphetamine. (Appellant's Brief at p. 22) Further, Appellant emphasizes the *absence* of various affirmative links as constituting probative force leading to the conclusion that there is, in fact, insufficient evidence to support the conviction. (See Appellant's Brief at 21-22) This argument is not consistent with current jurisprudence since it employs the discredited "divide and conquer" analytic construct in an effort to demonstrate that there is insufficient evidence in support of the verdict.

A dispassionate, thorough review of all of the evidence demonstrates that the State proved up the requisite affirmative links -- his joint possession and access to all areas inside the residence and workroom in question, including the key to the detached shed; the existence of several items of drug paraphernalia in and around all of the common areas under Appellant's dominion, access, management and control; his immediate acknowledgment that the plastic baggie found in the workroom contained methamphetamine; his admission to recent methamphetamine use; his disavowal of any medical condition which would require the administration of injectable drugs with a syringe; his failure to provide an innocent explanation for the existence of multiple syringes when given the opportunity; the presence of multiple security camera throughout the residence and his attempts at blame-shifting onto the shoulders of

19

Treadway -- which, when combined with a juror's permissible inferences derived from the wealth of circumstantial evidence suggesting intentional and knowing possession, succinctly establish legally sufficient evidence to support the jury's verdict of guilt.

## *ARGUMENT*

### *Standard of review*

When conducting a legal sufficiency review, the reviewing court must view the evidence in the light most favorable to the verdict to determine whether a rational finder of fact could have found each element of the offense beyond a reasonable doubt. *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex.Crim.App. 2003); *Conner v. State*, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001). It is not the State's burden to exclude every conceivable alternative to a defendant's guilt. *Temple v. State*, 390 S.W.3d 341, 363 (Tex.Crim.App. 2013); *see also Laster v. State*, 275 S.W.3d 512, 520-21, 522-23 (Tex.Crim.App. 2009) (reiterating rejection of reasonable hypothesis analytical construct); *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App. 1993) (explaining that "evidence is not rendered insufficient because appellant presented a different version of the events.")

The trier of fact is the sole judge of the weight and credibility of the witnesses and evidence. *Brown v. State*, 270 S.W.3d 564, 568 (Tex.Crim.App. 2008), *cert. denied*, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009); Tex.Code Crim. Proc. art. 38.04.

An appellate court is not free to substitute its judgment for that of the fact-finder nor may it re-evaluate the weight or credibility of evidence in the record. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Simply put, the appellate court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all of the evidence when viewed in that light most favorable to the jury's determination. *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex.Crim.App. 2007). If, based on all of the evidence, a reasonably-minded jury *must necessarily* entertain a reasonable doubt of an accused's guilt, due process requires that the appeals court reverse and order a judgment of acquittal. *Swearingen, supra* at 95; *Narvaiz v. State*, 840 S.W.3d 415, 423 (Tex.Crim.App. 1992). (emphasis added)

### The Law on Affirmative Links and
### Possession of Controlled Substance

In order to convict Appellant of the indicted charge of possession of methamphetamine, the State had to prove that 1) Appellant, 2) intentionally and knowingly, 3) possessed, 4) methamphetamine 5) of four grams or more but less than two hundred grams. TEX. HEALTH & SAFETY CODE § 481.115(d)

In order to establish the unlawful possession of a controlled substance, the State must prove the accused: 1) exercised care, control and management over the contraband and 2) knew that the matter possessed was contraband. *Joseph v. State*, 897

S.W.2d 374, 376 (Tex.Crim.App. 1995); *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App. 1995). If the accused is not in exclusive possession of the contraband, the State must affirmatively link him or her to that contraband. *Brown v. State*, 911 S.W.2d 744, 748 (Tex.Crim.App. 1995). An affirmative link is a "shorthand expression of what must be proven to establish that a person possessed some kind of drug 'knowingly or intentionally.'" *Id.* at 747. The establishment of an affirmative link may be through either direct or circumstantial evidence. *Id.*

When determining if the State has established the necessary affirmative links between the defendant and the contraband, the appellate courts may consider the following, *non-exclusive* factors: 1) whether the drugs were in plain view; 2) whether the defendant was present when the drugs were found; 3) whether the defendant owned or had the right to possess the location or habitation where the drugs were found; 4) whether the drugs were conveniently accessible to the defendant; 5) the amount of drugs found; 6) the location, quantity and variety of paraphernalia or other items associated with the drug trade found in proximity to the contraband; 7) whether a strong residual odor from the drugs was present; 8) whether the physical condition of the defendant indicated a recent consumption of the drug in question; 9) whether any furtive gestures were made by the defendant if apprehended at the time the drugs were discovered and seized; 10) whether the defendant had any special connection to

the drug; 11) whether the place where the drugs were found was enclosed; 12) whether the defendant was found near or in close proximity to the drug; 13) whether the occupants of the premises gave any conflicting statements about relevant matters; 14) whether there were affirmative statements to connect the defendant to the contraband; 15) whether the defendant possessed weapons; 16) whether the defendant possessed a large amount of cash and 17) whether the defendant's conduct indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006); *Poindexter v. State*, 153 S.W.3d 402, 412 (Tex.Crim.App. 2005).

In deciding whether evidence is sufficient to link the defendant to the contraband, each case must be examined on its own facts. *Hurtado v. State*, 881 S.W.2d 738, 743 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd.). There is no established formula that dictates a finding of an affirmative link sufficient to support an inference that the defendant knowingly possessed the contraband. *Porter v. State*, 873 S.W.2d 729, 732 (Tex.App.-Dallas 1994, pet. ref'd.). It is not the number of affirmative links present (or the number of those that are not present) but rather the logical force of the links which is relevant in a sufficiency analysis. *Evans v. State*, 202 S.W.3d at 161-62. The absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links that are present in a legal review. *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex.Crim.App. 1976);

23

*James v. State*, 264 S.W.3d 215, 219 (Tex.App.-Houston [1ˢᵗ Dist.] 2008, pet. ref'd.). In other words, the reviewing court will not engage in a "divide and conquer" analysis. When determining whether the evidence affirmatively links the defendant to the contraband, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight, if any, to be given to any part of their testimony. *Poindexter v. State*, 153 S.W.3d at 406.

### *Application of law to these facts*

Appellant's suggestion that his eight "non-exclusive indicators of a link to Appellant," when weighed against those which he concedes connects him to the methamphetamine, renders the evidence legally insufficient to sustain the jury's verdict of guilt is yet one more attempt at the discredited "divide and conquer" analytic construct which has been soundly rejected by the Court of Criminal Appeals. *See Temple v. State*, 390 S.W.3d at 363. Instead, each case must be examined on its own unique set of facts and cannot be subjected to any formula which weighs and contrasts the *absence* of various affirmative links against those which are present. There are an array of indicators and factors to be considered by the reviewing court, just as was done by the jury. Among the *Poindexter* indicators summarized above, the finder of fact is also entitled to consider, *inter alia*, motive, circumstantial evidence and incredible or implausible statements of the accused when drawing inferences of

24

guilt from all circumstances. *See Gear v. State*, 340 S.W.3d 743 (Tex.Crim.App. 2011); *Clayton v. State*, 235 S.W.3d 772 (Tex.Crim.App. 2007). With these principles in mind, review of the evidence reveals a wealth of evidence which the jury reasonably relied upon to return a rational verdict of guilt.

The fatal flaw to Appellant's sufficiency review is that it assumes the State was required to prove up his *exclusive* possession of the methamphetamine in order to secure a verdict of guilt. However, the prosecution made it clear that its burden rested on presenting sufficient evidence that he "exercised care, custody, control or management [over the methamphetamine], either alone or with someone else." (R.R. 3:135) This was a correct statement of the law to which Appellant voiced no objection. The jury could have rationally concluded that Appellant's control, management and custody of the methamphetamine was exercised either exclusively or jointly with Treadway in view of the compelling circumstantial evidence it had at disposal.

For example, his knowledge of the presence of methamphetamine in the house and shed was never in serious dispute. It was his house and his shed, regardless of the fact that his sister owned the title to the property. The defense never seriously contested this fact, even eliciting the concession through cross-examination of Robertson that Appellant was the "primary resident." (R.R. 3:74) Further, his multiple

25

admissions concerning his familiarity with and recent use of methamphetamine explained why the house and shed would be littered with drug paraphernalia. And this drug paraphernalia was not limited to an odd pipe or two; Officer Robertson's haul of evidence included several syringes, digital scales and multiple sets of glassware commonly used in methamphetamine consumption. Appellant's denial that he was a diabetic dispelled any possible innocent explanation behind the presence of this damning evidence.

The fact that Exhibit 19, the actual methamphetamine contained in the cloth bag, was found in the locked detached shed was significant. In this vein, recall that Appellant provided the key to the shed once Robertson requested entry into the area and there was no evidence that anyone else in the house, including Treadway, had knowledge or access to this key. Moreover, nothing in the shed was ever associated with Treadway. Indeed, by giving deference to Robertson's testimony (as the jury was entitled to), it showed that the shed was in actuality a workroom, full of tools and various articles (such as Appellant's IPad located uncomfortably near a collection of glass pipes with residue) clearly connected to a male. The discovery of additional paraphernalia in the shed's attic only added to this wealth of circumstances pointing directly to Appellant's custody and management of the shed and knowledge of its contents.

Appellant fails to address the relevance of the security camera system operating at the residence. Although one can envision a homeowner's legitimate concern for safety and preservation of property, the fact that the southeast bedroom had been converted an area for monitoring the video input from the various security cameras, coupled with the discovery of yet additional paraphernalia on top of a bookcase within that room, made for compelling evidence of knowledge on Appellant's part that methamphetamine was an integral ingredient to the experience of daily existence in this residence.

The jury was fully entitled to consider Appellant's contradictory and implausible statements after he was placed under arrest. Rather than give an honest or innocent explanation to his acknowledgment that the green bag contained methamphetamine, Appellant simply affirmed that both he and Treadway used the drug. Whereas his initial admission to the use of methamphetamine was couched in terms of "years ago," the longer he spoke with Robertson, the more recent his admissions of use became. And nowhere did Appellant provide any plausible explanation for the presence of multiple syringes or the vast number of glassware objects. Given the full opportunity to disavow *any* connection to the drugs, paraphernalia, glassware or digital scales, the best response Appellant could muster was one which shifted the bulk of blame over to Treadway. Again, the jury was

entitled to consider these responses as wholly unsatisfactory when considering Appellant's defense that he had been set up by a "scorned woman." At the very least, his admissions established joint knowledge and possession of the methamphetamine in question, never mind the persuasive evidence linking Appellant *solely* to the scales, glassware, pipes and methamphetamine found inside his shed.

The logical force of all of these indicators - his ***status*** as the "primary resident" of 7002 Imperial; his ***actual knowledge*** that the substance inside the cloth pouch was methamphetamine; his ***possession*** the key which provided access to the locked shed; the ***abundance*** of various items of drug paraphernalia littered about the residence; the ***sheer number*** of glassware items, commonly used to smoke methamphetamine, found in the bedroom converted into a monitoring area for the security camera system which Appellant set up; Appellant's ***disavowal*** that he was diabetic which could have explained all those syringes contained in box proffered by Treadway; the ***discovery*** of drug paraphernalia in the enclosed attic in the shed; Appellant's ***utter failure*** to profess ignorance of drugs, paraphernalia, syringes, pipes and scales; his ***multiple admissions*** to drug use - presented the jury with a buffet of evidentiary indications proving beyond any reasonable doubt his intentional and knowing possession of the 6.9 grams of methamphetamine found with the shed/workroom.

Appellant seems to suggest that the lack of direct evidence linking Appellant

28

to the various items catalogued above amounts only to proof which raises "strong suspicion or mere probability" to show that Appellant had knowledge and control over the methamphetamine. If this really was applicable law, then arguably the only way the State could ever sustain its burden of proof under similar circumstances would be to secure a cinematic reproduction of the crime where each element is revealed frame by frame. Yet the State is not required to rely exclusively on direct proof which must exclude reasonable alternatives to the issue of guilt. In this case, the jury was correctly charged and the prosecutor correctly argued that the evidence supported Appellant's guilt under either exclusive or joint possession. Its verdict is reasonable when viewed from its determination of guilt derived from the combined and cumulative force of all of the evidence. *accord Triplett v. State*, 292 S.W.3d 205, 210 (Tex.App.-Amarillo 2009, pet. ref'd.) (holding that, among other factors, defendant's 1) presence, 2) proximity to a lot of drug paraphernalia and 3) occupancy within an enclosed space where the drugs and paraphernalia found was legally sufficient to support the jury's implied finding that he exercised actual care, custody, control or management of the controlled substance and that he knew the matter possessed was contraband).

### *PRAYER*

WHEREFORE, the State prays that Appellant's conviction for Possession of

a Controlled Substance > 4 grams < 200 grams be affirmed in all things.

Respectfully submitted,

JAMES A. FARREN
CRIMINAL DISTRICT ATTORNEY
RANDALL COUNTY, TEXAS

s/ Warren L. Clark
WARREN L. CLARK
APPELLATE CHIEF
SBN 04300500
ASST. CRIM. DISTRICT ATTY.
RANDALL CO. JUSTICE CENTER
2309 Russell Long Blvd., Ste. 120
Canyon, Texas 79015
806/468-5570
806/468-5566 (fax)

## *CERTIFICATE OF COMPLIANCE*

I hereby certify that the true and correct word count to the foregoing State's Brief is 7,205 words. The brief was prepared with WordPerfect software in 14 point font.

s/ Warren L. Clark
Warren L. Clark

## *CERTIFICATE OF SERVICE*

I hereby certify that a true and correct copy of the foregoing State's Brief was provided to James B. Johnston, Attorney for Appellant (KRISTOPHER DONALD MIXON), P.O. Box 273, Hereford, Texas 79045, on this the 4th day of August, 2015

s/ Warren L. Clark
Warren L. Clark